Case number 21-5283. Anatol Zukerman and Charles Krause reporting LLC, DC Limited Liability Company, Appellants, versus United States Postal Service. Mr. Toronto for the Appellants, Mr. Solzmann for the Appellate. Good morning, Council. Mr. Toronto, please proceed when you're ready. Good morning, Your Honor, and may it please the Court. The Supreme Court and other federal courts have uniformly held that they must provide complete relief for a plaintiff's ongoing constitutional injuries to the extent possible. As far as we are aware, no case holds otherwise. The government asks this circuit to be the first. The implementation of the complete relief principle can be complicated in some cases, but it is very simple here because of everything about which the parties and the district agree. Everyone agrees that we have an ongoing constitutional injury. Everyone agrees that an order to print our postage would completely cure that injury. Everyone agrees... I think what they say is we can't prove that one stamp won't, at some point, circulate again. That's different, isn't it? I don't think it is, because that is basically the argument. This Court's prior decision was... Do you mind just... Sorry, just putting the mics in a position. Maybe you could even raise the podium a little bit with the switch. That works. Thank you. Excuse me. I don't think it is different, because the idea that our injury has vanished since the litigation began, that is a mootness question, and USPS clearly bears the burden to show this. It didn't put in any evidence at all about the dwindling of postage over time, and it has information to that. Well, you're seeking an injunctive relief, correct? That's correct. And under the Swim Corps' decision in Lyons, you have to establish standing to obtain injunctive relief. And to do that, you have the burden of showing that there's something more than a speculative risk of injury. How have you done that? So, in Lyons, the issue was recurrence of an injury where... I think that's the exact same here. I mean, you had the original injury, but we are now... At the time the District Court was considering what relief to enter, summary judgment, you had to show to the summary judgment standard that you had standing to obtain that injunctive relief that you're asking for here. And so now it's not the burden on the government, the burden's on you to demonstrate that there's something beyond speculative that this injury will recur. This is not a case about a recurrent injury. It is about an ongoing injury. So we're not saying, and did not say below, that, oh, we can get stopped for a while, but it might come back. The issue is that the forum remains open. Other people still have customized postage that they can use. As far as we know, there could be millions of these still out there. Many of them could be political and could have been granted. So your injury would be ongoing if, let's say, that the government could actually demonstrate that there are not and will not be any more stamps that contain, assuming we can ascertain what this means, a political message ever again. You would still have an ongoing injury. And the forum is closed. I think if they had all, if they've all been used, right, if they're all out. I'm telling you, they've proven one way or the other that there's not going to be another stamp out there, at least that is political. However, that is to be determined. And the forum is otherwise closed. So somebody might still send out their wedding stamp, something like that. In that circumstance, we would not. And the case would be OK, so it sounds like the question that then for you to your theory is. Not ongoing, but recurring because someone will be sending out even though the forum is closed, someone's going to send. We think there's a prospect or the government hasn't disproven that there won't be another political stamp out there. I don't agree with that because the political stamps are out there. The government had the burden. Well, they're in people's houses. That doesn't count, does it? Yeah, they are, because the use, the speech in the forum is the use of the postage to send. No, that's what I'm saying. If they're if they happen for a collector's item, they're never going to. No one's going to. The government showed that no one's actually ever going to use them again. Use them to go through the mails. Then the forum is closed. But I think there's a very important difference between the program being closed and the forum. They didn't close the program. They've stopped making new customized postage. But what they haven't done is actually closed the forum. The analogy that we used in the last appeal and I think this court accepted it. Wait, you're saying that they haven't closed or forbidden those who had stamps before. Correct. Continuing to use them. They've certainly shut down the program. Right. That's correct. You're just saying there's some there's some stamps out there. We don't know how many. And because there are some out there, we should be able to put ours out there. But to put yours there would be in violation of the program, which they have permissibly shut down. I think it would be. I mean, I don't think it would be in violation. Sure it would. Any of anyone else's rights. Well, it's in violation of their program permissibly. They adopted a new program, getting rid of the old program. In other words, we're not doing this anymore. And you're saying, well, make an exception for us because we previously suffered harm. I think it's not because we previously suffered harm. It's because harm from what from the prior viewpoint, discriminatory policy is ongoing because of all the customized postage that remains out there. Wait, I thought you said not all customized postage, only the risk of some. All the political custom. Which was only for a couple of years, as far as we know on, again, a summary judgment on Zazzle. Right. The record only covers a few years of postage that was granted. But Zazzle had this written policy of we don't forbid all political speech. We just forbid political speech that we consider controversial. That policy was in place for a long time. Well, as I read the district court's findings on summary judgment, this was the problem that you had identified a viewpoint discrimination was confined to, if I've got the dates right, and you can correct me if I'm wrong, but 2015 to 2016. And mainly one person who was issuing a lot of what was authorized or making a lot of these viewpoint discriminatory decisions about what would count as political or not. Controversial, maybe under their test. I don't think it's right that this was one person. I think there were a few, kind of like, electioneering designs where Zazzle fired someone because that seems to have been a mistake. Our claim is not based on those. Our claim is based flag designs, the pro-Bergefell designs, the support our troops designs. These are political messages that Zazzle thought. Have you challenged on this appeal anything other than the remedy? No, we're not. So what we take is given the district court's analysis on the merits of the summary judgment. And you have not yourself shown that there's any, you haven't been able to show at the summary judgment level that there's a prospect, anything beyond sort of a speculative prospect, that another one of those stamps in the period identified by the district court will be used, which is, nobody can prove one way or the other, correct? Right. But I think first it is plainly USPS's burden to show that they won't be. I don't know how plainly it is if this is looked at from Lyon's angle. Well, I think it's the defendant's burden to show mootness. And it's the defendant's burden to show mootness. I'm not arguing mootness. I'm arguing whether you're entitled to injunctive relief. Right. I think even for injunctive relief, it can't then be the plaintiff's burden to also show that we had a discovery period. We. Not mootness. Nobody knows if it's, they don't know for sure. I mean, that's been your argument. We don't, who knows for sure if no one's going to come. I'm not arguing mootness. I'm arguing, does the prospect of it recurring, is it high enough to warrant, is it substantial enough, I think it's the word used in Lyon, substantial enough to warrant an exercise as an injunctive relief? Or could a district court decide that it wasn't substantial enough to warrant injunctive relief under Lyons? That's all I'm asking. Yeah, our position is that it's not at all about recurrence. Likelihood of recurrence is not relevant. The risk of your injury, which you've agreed here is another political stamp going, one of these customized stamps going through the mail. And so if the district court did not find a substantial, or you did not establish a substantial prospect of that happening, then under Lyons, injunctive, standing for injunctive relief, district court could determine that. Because your burden then at the standing stage is jurisdictional, would be to establish a substantial prospect. I don't think that's right because it's undisputed that these pieces of political customized postage can be used at any time. It's basically at the discretion of the people who have the holder. But it's still, I mean, you're not saying that there's a constitutional injury because of the risk that they can be put in the mail. I think there's a constitutional injury because the universe of designs that people can use to speak through the mail on postage, still includes today, regardless of whether, I mean, it still includes today, various political images, as far as we know. The question is, do you have an injury just because somebody has them and could use them? Or is it an injury that manifests when it in fact is used? I think it's actually enough that they could use it. And here's why. So then even if you knew to a moral certainty that everybody just had them as a collector's item, you'd still say that you're entitled to an injunction. If there was some way to actually show, oh, this is now such a collector's item, you couldn't actually use it to send mail? No, not that you couldn't, not that there's a legal bar, but just as a matter of fact. Right. I think that's right. And we do. Well, you think what's right. If you just knew as a matter of fact, that people are going to keep them as collector's items. And only as collector's items. Then I think we would not have an injury anymore. But then it seems to me that it's either that you have an injury because of the risk that somebody could use what they have. Or you don't actually have an injury until somebody in fact uses it. I think that the injury doesn't come from the other people speaking. The injury comes from the government's continuing authorization of those people to use. That authorization. But that's just a risk. I'm sorry. No, that's true. Even in the collector's item situation, that exists. Even if in fact, the people make their own decisions. It's not the government that's telling you they have to use them at a collector's item. Then I think that our position is that the injury comes from the government's continuing authorization that lets other people speak in this way. And it's as if you had a government-sponsored art show and the criteria is viewpoint discriminatory. And then they say, okay, we're closing the art show. But anyone who put their art up on the walls, you can take it down in your own time. We're not going to make you take it down. You can leave it up there as long as you please. Or maybe we'll reserve a space for you. You haven't put it up yet, but we have already reserved space for you. So you can go put it up at some time in the future and take it down. That is our continuing injury. And I do want to circle back to one of Judge Millett's questions, which is we do have an example from April 2021 of a piece of political customized postage. Yuri Gagarin, the Soviet cosmonaut, and he has a big CCCP on his helmet. And it's sort of this commemorative Soviet stamp that was available for repurchase on eBay for about $26. That was in April 2021. So that's kind of the last one. That was Zazzle? A piece of Zazzle postage. Did you raise that to the district court? And was it agreed that counts as political? We didn't talk about whether that specifically counts as political, but that's GA 1723-28. So what would satisfy you is they had a rule which announced that it's impermissible for anyone who bought these stamps previously to use them. Any longer, and if any of that group wants to come in and get a refund for their purchase, we'll give it to you. But you cannot. It's against our regulations to use these in the mail. That's it. That do it? That would be partial. It would not be complete. Why? Because it's pretty unlikely that that would actually get rid of all the existing political customized postage. You'd be leaving it up to the discretion of lots and lots of individuals. And I think we agree. This is what the district court was concerned about. It's utterly unmanageable what you're asking. I'm giving you a best case scenario, at least that I can think of. Soon the commission said, and the service follows it, these stamps previously sold may not be used anymore. It's impermissible as a matter of our rules. You want to bring them in and get a refund, we'll do that. But you cannot use these. Yeah, so I think that would end the case. But it is not the right remedy for a couple of reasons. It's not your preferred remedy, but why is it wrong? Because it burdens a lot of third parties who are not before the court. If USPS says that we're just going to invalidate a bunch of postage that we sold you, that's basically taking property from everyone who bought that stuff. No, we'll pay for it. We will pay you for it. Right. So I think if they actually did invalidate this stuff and they found everyone who had it and paid them for it, that is all well and good. It seems like it's a lot more trouble to USPS and to third parties than just printing two sheets of our postage. That our preferred remedy is the preferred remedy precisely because it is exceptionally easy. It does not require a big program. It doesn't require them to find and pay a ton of people who are not involved in this in any way. How much do you think your client should be free to put his preferred postage out in the market? To what extent? How much? For how long? And how are you measuring that? We are asking only for the two sheets that we initially ordered. How long? You just want two sheets? Just two sheets. Literally 40 pieces of postage is the end. Just what we initially ordered from USPS. It strikes us as, first of all, a very intuitive remedy for a First Amendment violation. Usually what happens in a First Amendment case, when a plaintiff wins, is that the plaintiff then gets to speak. So that's what we're asking for at the beginning. Not if the forum is closed. That is true, except the forum here is not closed. Can I follow up on that? Because you say it's easy. But the government raised the concern that if now the government were, after having closed down the program, to print a form of, undisputedly, I think, political speech on a stamp, selectively. They raised the concern, well, that other people who had been denied in the past could go, wait, you can't just print this stamps. I've suddenly learned now that I've had my First Amendment rights violated. Let's assume they're in the time frame, just because the government will have reopened the issue by issuing your stamp. And so then they get to file a First Amendment claim and say, we want our stamps issued. And I take it that your, as I understood your answer in your brief, it was too bad for you. So it would in fact violate other people's First Amendment rights for the government to undertake the remedy that you have requested. That I don't. And the reason... You don't think there's anybody else out there who was denied a political stamp? I think whoever else has an injury like ours, has that injury already. And it doesn't change or become any greater in scope because our design is printed. And that's because our design would be printed not on the basis of any viewpoint. Except the government would be doing it again. The government would be repeating the very action that you argue was unconstitutional for the government to engage in. You want them to repeat it one more time for you. And so that would be an unconstitutional action by the government, at least if they said no to anybody else who then asked for their stamps to be printed. That's not right. Because the reason for permitting or denying image into quanta-customized postage is all important. This is a viewpoint discrimination case. And the reason that our design would be printed here doesn't have anything to do with our viewpoint. When Zazzle was denying permitting images, it did have to be. So the injury comes from the application of that policy of we think this is controversial. We don't think this is controversial. Printing our design doesn't create an injury for anyone. The claim is not merely that some political postage was permitted. Well, we've got an injury if there's somebody out there that we don't know. There's no way to know these unknowables. But someone says, I have the I heart Citizens United stamp. I want it to get printed. And was told no by the government via Zazzle. And now I see the government issuing this. So that message is getting circulated by the government with its approval. The public's not going to go chase all down, look at the litigation, find there's some court order behind it. I see the government. I see the stamp going by. All right. I see the stamp on something that came to me in the mail. They're going to have a First Amendment claim, are they not? I, they, if they are similarly situated to us, where they were denied. Yes, that's my theory. Then they would have a valid claim. So then the government has to do the I heart Citizens United. I think it. I think somebody said I liked a different Supreme Court case or I didn't like, they all have to do it. So this goes on for quite some time. If people are similarly situated to us in the sense that they were, they submitted to Zazzle way back when. And they know about this. What's your best case that the district court is obligated under your theory to admit another First Amendment violation to remedy one? I don't think we are asking for the district court to admit another. So there is no case that says that. Right. There is no case that says that. But I would direct the court to recite a bunch of cases in our brief. One that is particularly helpful is the Brown v. Plata case. It's from 2011, the Brown v. Plata case. At 510 of that opinion, the court says, quote, quote, must not shrink from their obligation to enforce the constitutional rights of all persons. And the context is pretty powerful. That was an Eighth Amendment case about inadequate, constitutionally inadequate medical care in the California prison system. And what you had there was the constitutional rights of prisoners to adequate medical care on one side and immense state interest on the other side, which was California's ability to keep 38,000 people in prison who it thought should be in prison. I think what that case illustrates is that even where state interest is far faster than any state interest asserted here, the enforcement of the constitutional right comes first. It is the highest interest. I just have one other question to clarify on a different front. You argue in your brief that the declaratory judgment issue here was not worth the paper it was written on, I guess. It accomplished nothing. And in fact, before the district court, you even told it it did not have jurisdiction to enter the declaratory judgment because it would provide no relief. So if you're right, so essentially an advisory opinion or something. So if that's what you think it is, I take it you want us because you've labeled it jurisdictional whatever we do on your injunctive question to vacate the declaratory judgment. I think that's right. But the issue with the empty judgment is that it just didn't change anything about the relations between the parties. And usually when this comes up, it is in the jurisdictional context. But the district court did here, issuing a judgment that it knew was going to do absolutely nothing in the real world, was so bizarre that the best way we could think of to explain why it can't be right to do that is courts. Right. So just to confirm that you're a separate part of this appeal, you want the declaratory judgment vacated? I think we would like... No, no, no, that's not what I asked. Wait, wait, what was your question? I can't hear you. Sorry. He wants the declaratory judgment that was issued to be vacated because it was accomplished nothing, did not change the relationship between the parties and so effectively was an advisory opinion. As he told the district court, it lacked jurisdiction to enter that declaratory judgment. Yeah, I think the correct framing of that issue is that the district court clearly had jurisdiction over the case, the remedy that it issued. It lacked jurisdiction to issue that remedy, as you told it. Yeah, to issue that remedy. That's correct. Okay, thank you. We'll give you a little bit of time for rebuttal. Mr. Saltzman. Thank you, your honors, and may it please the court, Joshua Saltzman on behalf of the Postal Service. I want to begin by emphasizing that the district court's liability finding here rests entirely on a very small, enclosed universe of customized postage that was issued in the 2015 to 2017 time range by Zazzle. We're talking about something on the order of 25 sheets of postage. I heard my opposing counsel reference a guarantee stamp from 2021. To be clear, that was just a resale posting on a secondhand website, and it's unclear whether that was even being sold as postage or as sort of a collector's item. Somebody who might just want this commemorative stamp not to send a letter, but rather just to keep it. I think we... So it didn't go through, as far as you know, it didn't go through the mail. Precisely. And we have a very small universe, and surely that has largely dwindled, of postage that was the basis for the complaint here. Now, at the merit stage, the uncertainty cut against us. There's a stringent test for mootness. We couldn't show that there was not a Bernie 2016 stamp in somebody's drawer that they might then, five, six years after the fact, choose to stick on a letter and to mail it. And because of the stringent test for mootness, we weren't able to prevail, particularly against the backdrop of this court's prior ruling in this case. But once you get to the remedial phase, the calculus is different. You can think of it in standing terms, in liens, as I heard Judge Collette do earlier, or you can also conceptualize it as just part of the balance of equities. What is the strength of the injury that they are showing once you start performing the equitable calculus? Either way, the district court committed no abuse of discretion in considering the fact that the program was closed, that the number of pieces of postage issued was, quote, infinitesimal compared to the larger size of the entire program, and an array of other equitable factors in concluding that plaintiffs hadn't shown entitlement to their preferred injunctive relief. Now, what do you think is... I want to make sure I understand what you think your strongest argument is. You're saying that if there are some other pieces of postage out there they're offended by, the number is so small it's to be insignificant, or are you saying it would be too burdensome for the district court and the postal service to try and figure out what that universe is? Or are you saying both? What are you saying? So what I'm saying is what the district court took account of in exercising its equitable discretion were an array of factors, including the relative harms to the parties, the relative burdens to the parties. The district court had before it a declaration from the postal service, from the executive director of brand marketing, Mr. Kropenko, the relevant sections at pages 896 to 897. It spoke to the postal service's just technical inability to identify and claw back or invalidate whatever postage is out there. The district court also took account of the exceedingly small quantity of postage that was the basis for this, and also the fact that the forum has been closed. That's what the district court said at... What do they know about the small quantity? How can they definitively say that it's small? How small is it? So all I can say is that the merits ruling against us was predicated on a finding of identification of just a handful of designs. The other reason we know it's small is because we produced massive discovery in this case. The plaintiffs were given access to a large number of the designs approved by Zazzle over the 2015-2016 timeframe, and they had the opportunity to come forward with their best examples of political postage. And the district court found a few of them did qualify as political postage, and according to them, we ended up losing on the merits. But again, once it shifts over to the remedial analysis, the factors weigh differently, and the size of the violation is certainly relevant to determining the propriety of equity. Well, but I'm still trying to get an answer from you if there is one. It may be that there isn't. That's why I was curious as to what your argument is. How large is that group? Are we talking about 10,000 stamps? Are we talking about 10? Are we talking about what? So the district court pointed to 25 sheets of stamps. I think it was comprising something like six designs. The district court also said that there were also opinion sites, a handful of additional designs as well. But in terms of the overall magnitude, I don't think the district court specifically quantified the number of political stamps, but said it was quite small. I think it used the word infinitesimal in its remedies opinion. And what's your best case authority for what appears to be your argument? That even though, yes, we lost, we didn't prefer to lose on the claim that there was a constitutional violation, we found a constitutional violation. There's no doubt. And normally, we give a remedy when we find a constitutional violation. And you're essentially arguing, well, no, there shouldn't be any remedy here. What's your best case authority? I would say it's City of Mesquite versus Aladdin's Castle, footnote 10, which specifically, which was, by the way, cited and discussed in this court's prior opinion in this case, which stands. Really fine opinion. But I would say if you, footnote 10 draws a distinction between mootness and saying we have to reach the merits here. But nonetheless, depending on the likelihood of future violations, the district court will still have the opportunity to decide whether or not injunctive relief is appropriate here. An injunction does not follow mechanically after every finding of a violation, though the Supreme Court has said that numerous times from Weinberger versus Romero-Barcello and the Imoco products case and Winter and a number of other times, too. It is a hallmark of equity jurisprudence that it does not apply mechanically and that it is allowed to take and that we entrust district court sitting as courts of equity to consider case-specific factors in crafting a remedy. That's precisely what the district court did here across its two well-received cases. Mesquite is hearkening to our body of attenuation doctrine cases, where when a claim for injunctive relief just becomes, apart from Lyons, just becomes so attenuated because in those cases defendants have already complied with many, many aspects, have canceled the bad thing, no questions of voluntary cessation. It's all been largely resolved, maybe even without a court order, that it can just become too attenuated to make the intervention of injunctive relief warranted. And I think that's right. The district court rightly noted here that the plaintiffs have already gotten a great deal out of this litigation. Now, a lot of that was through voluntary choices made by the Postal Service. The Postal Service got out ahead of what might have been the result of litigation by just shutting the forum down altogether. We've done our best to close this off. There are, or at least we cannot rule out the possibility, that there is some limited quantity of postage out there that we can't claw back and can't decertify. But we have done everything within our reasonable power to shut this program down. We can't claw back because we can't find it? We can't identify it? That's right, Your Honor. And this is in the Carpengo Declaration, J897. There was never a contractual relationship or direct interaction with the customers here. This was handled exclusively by the vendor. And plaintiffs never subpoenaed Zazzle to get records of who bought what? That isn't something we've attempted. I'm not saying that there is. I don't know what records Zazzle... Plaintiffs didn't attempt it either. Neither of you attempted to find that information? I'm candidly not certain, Your Honor. I don't want to take an absolute... I know Zazzle did produce some materials that are in the record here and did produce some discovery. I don't know whether that was voluntary or personal. What sense does declaratory relief make in a case like this? We didn't argue for declaratory relief here. And if the plaintiffs want the declaratory judgment struck down, we're not going to oppose that. We're simply saying whatever you think of the propriety of declaratory relief here doesn't provide any basis. We're concluding... Will you just give me your lawyerly impression on whether that makes sense, given the case laws we understand it and the rules? Is declaratory relief... Again, I understand the side you have to represent. Does that make sense, declaratory relief in this circumstance? I understand. I certainly understand why there are reasons to think declaratory relief might not have been appropriate here. As the party that was the losing side of the declaratory relief, we haven't appealed from that judgment. But for what's relevant to this appeal, they tried to sort of boomerang that into saying declaratory relief was inappropriate and accordingly we were entitled to injunctive relief. And that's certainly where I would strongly take issue. But then would it be a case when they would have won but gotten no relief? No, because... If declaratory relief is improper. If declaratory relief is improper, then perhaps there would be no court order of remedy in this case. But first of all, I think under City of Mesquite, that's not necessarily something that's inappropriate. But I'd also say, if you go back in time, if you go to JA-176, which is the prayer for relief in their complaint, and see what they hope to get out of this litigation, as the district court noted in its remedies opinion, they have gotten it. The prayer for relief said, for example, don't let Zazzle print any more postage until it prints our postage. Well, we've stopped letting Zazzle print postage. They got terminated in 2018, and then the entire program got shut down in 2020. Now, instead of that happening, we had litigated this case on the merits, and ultimately we'd gotten an injunction that forced us to terminate Zazzle or terminate the entire program. But the plaintiffs had also said, but make them print our stamps too. The district court said, I'll give you the invalidation of the program, the prospective ongoing constitutional injury, the viewpoint discrimination. But on balance, I'm not going to award you in order requiring the Postal Service or Zazzle to print the stamps. You wouldn't say they got no relief out of this litigation. You would just say they got some of what they asked for, but they didn't get all of it. Can I ask the following question, which is just so I understand the government's theory. Suppose you have a situation in which the government constructs a program whereby they want to engage in viewpoint discrimination, or at least you have some officials that want to engage in viewpoint discrimination, and the way they execute the scheme is as follows. We're going to grant some of these stamps. We'll work with our vendor to grant some of these requests. But then the minute we get one that we actually don't want to grant, we'll deny it, but we'll terminate the program. And then that way, the stuff that's already out there can be circulated as much as people want to circulate it. But then we're going to be pretty sure that a court's not going to require us to grant this latest one and print them. We'll just end the program there, and then the program will actually have been terminated, and we'll sort of get the place where we want to be. And I assume that the government wouldn't say at that point, it's fine just to let things lie, and the district court should not enter injunctive relief of any kind, given the hypothetical design of the program. Obviously, that's not what happened here, or at least that's not being alleged. But what would be the route by which we would distinguish the two situations, or a district court would distinguish the two situations such that they would grant broader remedial relief in this hypothetical scenario, but would still be OK in not doing it in the scenario we have here? Yeah, I'm not asking for any one-size-fits-all rule. I'm not saying that any time we shut down the program that there's no room for injunctive relief that would rectify a situation like the one you're talking about here. The district court here cited an array of these specific equitable factors. It was just given this particular confluence of facts found injunctive relief to be inappropriate, and I'm saying there was no abuse of discretion there. I'm not asking you to do anything more than affirm that application of equitable principles to this specific set of facts. Different equities, different scenario, different volumes of speech, different program design or intent, all of those things are the kinds of factors that courts of equity can and must take account of. I'm not asking for any categorical rule. Well, in that case, I assume a declaratory judgment might do something like preventing them from doing it again the next year. That could be, again, It would prevent them from doing it the next year. Oh, absolutely. If they had this manipulative intent. Oh, absolutely, Your Honor. Yes. The question would be whether that would be enough, or would that alone be enough? Would the government say, well, we've entered the program, and therefore, all there needs to be is a declaration. See the precedent in this case. It's assuming we agree with you. I'm not asking you to write a precedent that would say, if we approve 100 million pro-Citizens United stamps, knock them out the door, shut the program down, and then said, nope, no anti-Citizens United stamp, and there's nothing you can do about it while these are all out and with this massive supply out there. That would be a very different equitable situation. And I'm not asking you to write an opinion or to conclude that, as a categorical matter, shutting down the program would preclude injunctive ruling. I thought the government's own issuance of postage stamps wasn't even at issue here, because that seemed to be government speech. And you issue stamps with flags on them, and you issue commemorative ones. Martin Luther King stamp and Harriet Tubman stamp, and someone might argue those have some political overtones. So it seems to me it's just a very different thing anyhow, because no one here is challenging the government's ability to speak stamps itself issues. This here was authorization of a forum and regulation of it. Yeah, you're absolutely right, Your Honor. And I might have misspoke and used the word stamp there. I meant to talk about customized postage. But you're absolutely right to highlight a very important distinction to us between stamps, which are government speech, and the customized postage program, which was intentionally structured not to be. Okay, make sure my colleagues don't have additional questions. Thank you, Your Honor. Mr. Salzman. Mr. Toronto, we'll give you two minutes for a rebuttal. Can I just circle back to a couple issues? The first is that I think it's important to note that the government concedes ongoing injury, that that is what its concession and discord regarding movements means. And this is unlike City of Mesquite. This is not a case about the occurrence of an injury. This has to do with the government's ongoing authorization for others to continue speaking on customized postage, including political message, and that is why. But it's not ongoing. I thought you agreed because you're not injured if it's just sitting in people's drawers as a collection item, or they're using it to line their kitchen drawers or something like that. I thought it was only, I thought you said it was only an injury if it is then used to go through, if it actually goes through the mail. That is not our position. Our position is that the government's continuing authorization, which allows people who have it sitting in desk drawers to use it at some point that is up to them. That is the ongoing. Well, I thought you said the opposite to Judge Shinervason's hypothetical about collector items. Well, it's in any case, I'm glad I circled back. I don't see how you dismiss City of Mesquite because footnotes talking about situations where the likelihood of further violations is sufficiently remote. That's exactly what you're talking about here. The future violations that you're concerned about, those who were given permission, your client wasn't, those people will be able to continue to use stamps that they should have gotten. That is a further violation. And City of Mesquite says if the district court finds that that's sufficiently remote, then there may not be a remedy. I don't see how you can dismiss that. And it's a perfectly reasonable notion. And especially if there's going to be a problem trying to determine who these people are. I mean, that's what the court was saying in that case. Not move, but when it goes back, you still may end up. That's exactly the situation. Not move, goes back. There may be some continuing violation, but if the district court finds it sufficiently remote, we're not going to say that there has to be a specific injunctive relief. I think the distinction I would make is between other people's actual use of the customized postage that they have and the government's continuing permission for them to do so. And this court's prior opinion, I thought, was wonderfully clear on the idea. As the court said, the past is not dead. It's not even past. Nothing has changed between the last time this court heard basically the same argument from the government. The program's been shut down. Program's been shut down. It changed because we were wondering whether we were going to get the case out before the program was shut down and whether the moot and sprinkler would be entirely different. I don't think the program as a whole being shut down makes any difference because the last time this court heard the case, Zazzle's relationship with USPS and its ability to make customized postage had already been terminated. Our as-applied viewpoint discrimination claim, this is not a facial challenge, and that's a very important distinction with the likelihood of recurrence cases. We're not saying that we think the Postal Service is likely to recreate the program and do exactly the stuff that it did last time. This is not about bringing back something that it got rid of during the course of litigation. This is about ongoing effects from prior viewpoint discrimination that because of the nature of the forum, it is a strange forum, it is difficult for USPS to close. It is difficult for USPS to cure our injury except by granting our postage. Because that is so easy and because the alternative is so difficult, we think granting our postage is the clear route. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Millett, Edwards